# **APPENDIX B**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | Case No. 6:20-cv-00482-ADA |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| DELL TECHNOLOGIES INC., DELL INC., AND EMC CORPORATION, | |
| Defendants. | |

**LETTER OF REQUEST: REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE
PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING
OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS**

GREETINGS:

| | | |
|---|---|---|
| 1. | Sender | The Honorable Judge Alan D Albright, District Judge United States District Court for the Western District of Texas, Waco Division 800 Franklin Avenue Room 301 Waco, Texas 76701 USA |
| 2. | Central Authority of the Requested State | Amtsgericht Freiburg im Breisgau Holzmarkt 2, 79098 Freiburg im Breisgau |
| 3. | Person to whom the executed request is to be returned | This Court; representatives of the parties as indicated below; the witnesses from whom evidence is requested as indicated below; such other person(s) that you deem proper; and Defendants' representative in Germany:<br><br>**Alexander Horn**<br>Gibson, Dunn & Crutcher LLP<br>Marstallstrasse 11<br>80539 Munich<br>Germany<br>Tel: +49 89 189 33-261 |

- 1 -

|   |   | Email: AHorn@gibsondunn.com |
|---|---|---|
| 4. | Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request | June 1, 2021 |

In conformity with Article 3 of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention"), Federal Rule of Civil Procedure 28(b), and 28 U.S.C.A. 1781(b), the undersigned authority respectfully has the honor to submit the following request:

| 5. | a. Requesting Judicial Authority (Article 3, a) | The Honorable Judge Alan D Albright, District Judge United States District Court for the Western District of Texas, Waco Division 800 Franklin Avenue Room 301 Waco, Texas 76701 USA |
|---|---|---|
|   | b. To the competent Authority of (Article 3, a) | Germany |
|   | c. Names of the case and any identifying number | *WSOU Investments LLC v. Dell Technologies Inc.* Case No. 6:20-cv-00482-ADA, United States District Court for the Western District of Texas |
| 6. | Names and addresses of the parties and their representative (including representatives in the requested State) (Article 3, b) | |
|   | a. Plaintiffs | WSOU Investments LLC |
|   | Representatives | WSOU is represented by: **Brett Aaron Mangrum** Etheridge Law Group 2600 East Southlake Blvd., Suite 120-324 Southlake, TX 76092 |

| | |
|---|---|
| | 469-401-2659<br>Fax: 817-887-5950<br>Email: brett@etheridgelaw.com<br><br>**Jeffrey Huang**<br>Etheridge Law Group PLLC<br>2600 East Southlake Blvd<br>Suite 120-324<br>Southlake, TX 76092<br>408-797-9059<br>Fax: 817-887-5950<br>Email: jhuang@etheridgelaw.com<br><br>**Ryan Scott Loveless**<br>Etheridge Law Group PLLC<br>2600 E Southlake Blvd<br>Suite 120-324<br>Southlake, TX 76092<br>972-292-8303<br>Fax: 817-887-5950<br>Email: ryan@etheridgelaw.com<br><br>**James L. Etheridge**<br>Etheridge Law Group, PLLC<br>2600 E. Southlake Blvd., Suite 120-324<br>Southlake, TX 76092<br>817-470-7249<br>Fax: 817-887-5950<br>Email: jim@etheridgelaw.com |
| b. Defendants | Dell Technologies Inc., Dell Inc., and EMC Corporation, (collectively "Defendants") |
| Representatives | Dell Technologies Inc., Dell Inc., and EMC Corporation, are represented by:<br><br>Shelton Coburn LLP:<br><br>**Barry K. Shelton**<br>Shelton Coburn LLP<br>311 RR 620 S<br>Suite 205<br>Austin, TX 78734-4775<br>512-263-2165 |

| | |
|---|---|
| | Fax: 512-263-2166<br>Email: bshelton@sheltoncoburn.com<br><br>The Defendant has appointed legal counsel in Germany to pursue and assist with the commission to take evidence. The details of the Defendant's legal counsel in Germany are:<br><br>**Alexander Horn**<br>Gibson, Dunn & Crutcher LLP<br>Marstallstrasse 11<br>80539 Munich<br>Germany<br>Tel: +49 89 189 33-261<br>Email: AHorn@gibsondunn.com |
| c. Other parties | N/A |
| Representatives | N/A |
| 7. a. Nature of the proceedings (divorce, paternity, breach of contract, product liability, etc.) (Article 3, c) | Civil action alleging patent infringement under the patent laws of the United States. |
| b. Summary of complaint | Discovery sought in this Letter of Request is relevant in Case No. 6:20-cv-00482-ADA: In WSOU's complaint against Defendants, WSOU alleges that Defendants infringe U.S. Patent No. 7,424,020 ("the '020 patent"). |
| c. Summary of defense and counterclaim | In defense against WSOU's claims of patent infringement of the '020 patent, Defendants assert, *inter alia*, that they do not infringe any claims of the '020 patent and that the '020 patent is invalid.<br><br>Emmanuelle Wetzel has knowledge of the facts relevant to Defendants' defenses. Emmanuelle Wetzel is relevant to the action by virtue of being a person involved in the assignment of the '020 patent. Emmanuelle Wetzel holds critical facts to this case, including facts relevant to a number of defenses raised |

| | |
|---|---|
| | by Defendants and any potential damages, including information related to the prosecution of the '020 patent; prior uses and/or sales or products and services incorporating the '020 patent, publications related to the concepts claimed in the '020 patent; commercialization, production and/or commercial embodiments related to the '020 patent; the state of the art at the time of the alleged invention and/or filing of the applications related to the '020 patent; the ownership and financial interests in the '020 patent; conception, diligence and/or reduction to practice of the concepts claimed in the '020 patent; and the disclosure of the claimed invention of the asserted patent.  As well as licensing of and/or agreements covering the '020 patent.  And, financial knowledge including valuation and royalties associated with the '020 patent or any license and/or agreement covering the '020 patent; and other financial interests (including revenue, costs, expenses and profits) as well as financial interests and information related to the '020 patent. |
| d. Other necessary information or documents | Emmanuelle Wetzel's current address is:<br><br>Nokia Solutions and Networks GmbH & Co. KG<br>Lorenzstraße 10,<br>70435 Stuttgart,<br>Germany |
| 8.   a. Evidence to be obtained or other judicial act to be performed (Article 3d), | In order to present its defenses that the '020 patent is not infringed, invalid, and unenforceable and to determine any alleged damages, Defendants seek certain answers to questions from Emmanuelle Wetzel. Defendants have collected these questions in a Witness Questionnaire which is attached as Exhibit B1. |
| b. Purpose of the evidence or judicial act sought | With respect to the '020 patent, Emmanuelle Wetzel has information and knowledge relating to the prosecution of the '020 patent; prior uses and/or sales or products and services incorporating the '020 patent, publications related to the concepts claimed in the '020 patent; commercialization, production and/or commercial embodiments related to the '020 patent; the state of the art at the time of the alleged invention and/or filing of the applications related to the '020 |

| | | |
|---|---|---|
| | | patent; the ownership and financial interests in the '020 patent; conception, diligence and/or reduction to practice of the concepts claimed in the '020 patent; and the disclosure of the claimed invention of the asserted patent.  As well as licensing of and/or agreements covering the '020 patent.  And, financial knowledge including valuation and royalties associated with the '020 patent or any license and/or agreement covering the '020 patent;  and other financial interests (including revenue, costs, expenses and profits) as well as financial interests and information related to the '020 patent.<br><br>This evidence is directly relevant to Defendants' claims that the '020 patent is not infringed, invalid, and unenforceable and to determine any alleged damages under United States patent law. |
| 9. | Identity and address of any person to be examined (Article 3, e) | Emmanuelle Wetzel<br>Nokia Solutions and Networks GmbH & Co. KG<br>Lorenzstraße 10,<br>70435 Stuttgart,<br>Germany |
| 10. | Questions to be put to the persons to be examined or statement of the subject matter about which they are to be examined (Article 3, f) | *See* Exhibit B1 |
| 11. | Documents or other property to be inspected (Article 3, g) | |
| 12. | Any requirement that the evidence be given on oath or affirmation and any special form to be used (Article 3, h) | We respectfully request that the testimony be taken under oath. |
| 13. | Special methods or procedure to be followed (e.g. oral or in writing, verbatim, transcript or | This Court respectfully requests that the Central Authority direct the witness, Emmanuelle Wetzel, to appear on or before June 1, 2021. |

| summary, cross-examination, etc.) (Article 3, i) and 9) | This Court respectfully requests that the witness be directed to answer such questions as Defendants or their counsel desire, relating to matters outlined in attached Exhibit B1. |
|---|---|
| | This Court respectfully requests that the examination be permitted to be conducted in accordance with the Federal Rules of Evidence, and the United States Federal Rules of Civil Procedure. |
| | This Court respectfully requests that Defendants and representatives be allowed to attend the examination and ask questions of Christopher Öchsner, relating to matters outlined in attached Exhibit B1. |
| | This Court respectfully requests that the examination be (partially) conducted via video conference to allow U.S. counsel to join the hearing. |
| | This Court respectfully requests that the testimony be video recorded and also transcribed verbatim. |
| | This Court respectfully requests that the testimony be taken in English language if the examined person(s) agree, and that, if need be, simultaneous translation be provided. |
| | Costs incurred for complying with the Federal Rules of Evidence (court reporter, video recorder, simultaneous translation) shall be at Defendants' expense. |
| 14. Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified (Article 7) | This Court respectfully requests that you notify this Court; the representatives of the parties as indicated above; the witness from whom evidence is requested as indicated above; and such other person(s) that you deem proper. |
| 15. Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request (Article 8) | No judicial personnel of the requesting authority will attend or participate. |

| 16. | Specification of privilege or duty to refuse to give evidence under the law of the State of origin (Article 11, b) | Defendants believe that Emmanuelle Wetzel does not benefit from any privilege, and does not endorse the assertion of any such privilege or duty. |
| --- | --- | --- |
| 17. | The fees and costs incurred will be borne by | Defendants will bear the reimbursable costs associated with this request in accordance with the provisions of the Hague Convention. |

So ORDERED and SIGNED this _____ day of _____, 2020.


_____
The Honorable Alan D Albright
 U.S. District Court Judge

# <u>**EXHIBIT B1**</u>

## ORAL EXAMINATION TOPICS REQUESTED

Defendants Dell Technologies Inc., Dell Inc., and EMC Corporation. (collectively, "Defendants") seek to ask questions on topics described below.

## DEFINITIONS

The following definitions are applicable to terms employed in responding to this request:

1. "Accused Product" or "Accused Products" shall refer to any device, product, or other thing that Plaintiff is permitted to accuse of infringing the Asserted Patent in this Action.  A copy of the Complaint in case number 6:20-cv-00482-ADA is attached as Exhibit B2. In referring to any device, product, or other thing as an "Accused Product," Defendants in no way communicate their agreement that it infringes the Asserted Patent.

2. "Action" shall refer to the above-captioned proceeding in the United States District Court for the Western District of Texas, with case number 6:20-cv-00482-ADA.

3. "Asserted Claim" shall refer to each claim of the Asserted Patent that Plaintiff contends Defendants infringe.

4. "Asserted Patent" shall refer to U.S. Patent No. 7,424,020 and any patent applications related thereto.

5. "Communication" shall mean, without limitation, any written, oral, or other transmission of information, including but not limited to emails.

6. "Complaint" shall refer to the Complaint (including exhibits) that Plaintiff filed on June 2, 2020 as docket number 1 in this Action, as may be amended.

7. "Concerning," "refer(s) to," "related to," "reflecting," and "relating to" shall mean directly or indirectly relating to, referring to, mentioning, reflecting, pertaining to, evidencing, illustrating, involving, describing, discussing, commenting on, embodying, responding to,

supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

8.  "Defendants" or "Defendant" shall refer to Dell Technologies Inc., Dell Inc., and EMC Corporation, and any and all of their then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

9.  "Document" shall include, without limitation, all documents, electronically stored information, and tangible things within the scope of the Federal Rules of Civil Procedure, including Rule 34.  Federal Rules of Civil Procedure 34 permits discovery of:  "(A) documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or (B) any designated tangible things."

10. "Employee" shall refer to any officer, director, partner, employee, representative, or agent.

11. "Licensee(s)" shall refer to any entity having a license, assignment, covenant not to sue, or other understanding, written, oral or implied, that the entity has any rights to the Asserted Patent, any Related Patents, or any Related Applications, may practice one or more claims of the Asserted Patent and/or that Plaintiff will not file suit or otherwise enforce against that entity one or more claims of the Asserted Patent or any Related Patent or Related Application.

12. "Named Inventor" shall refer to any individual who is listed as an inventor on the Asserted Patent or any Related Patent or Related Application thereof.

13. "Person" shall refer to any natural person, firm, association, partnership, government agency, corporation, proprietorship, or other entity and its officers, directors, partners, employee, representatives, and agents.

14. The terms "Plaintiff," and/or "WSOU" shall refer to the responding Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development, and any and all of its then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

15. "Prior Art" encompasses, without limitation, the subject matter described in each and every subdivision of 35 U.S.C. §§ 102 and 103, and includes, but is not limited to, memoranda, notes, manuals, interviews, testing data, disclosures, prototypes, correspondence, drawings, papers, articles, patents, printed publications, public uses, demonstrations, offers for sale or license, and sales.

16. "Related Application(s)" means any and all applications related to the Asserted Patent, including any provisional or non-provisional applications, continuations, continuations- in-part, divisions, interferences, reexaminations, re-issues, parents, foreign counterpart applications, and any other applications disclosing, describing or claiming any invention disclosed, described or claimed in the Asserted Patent, or claiming the benefit of the filing date of any application whose benefit is claimed in the Asserted Patent, whether or not abandoned and whether or not issued.

17.    "Related Patent(s)" means any and all U.S. or foreign patents based upon or related to any Related Application(s) or Asserted Patent, including any patents or applications that may have been opposed, reexamined, re-issued or subjected to any validity or nullity proceeding.

18.    "Third Party" shall refer to any person other than Plaintiff or Defendants.

19.    "You," "Your," "Yours" shall refer to Emmanuelle Wetzel, or Nokia Solutions and Networks GmbH & Co. KG, and any and all of its then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

20.    "Product(s)" means a machine, manufacture, apparatus, device, instrument, mechanism, appliance, software, service, process, or an assemblage of components/parts (either individually or collectively) that are designed to function together electronically, mechanically, or otherwise, including any offered for sale or under development.

21.    Any pronouns shall be construed to refer to the masculine, feminine, or neutral gender, in singular or plural, as in each case is most appropriate.

22.    The singular form of any word shall be construed to also include the plural, and vice-versa.

23.    The word "each" shall be construed to mean "each and every."

24.    The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request more inclusive.

25.    The words "any" and "all" shall be construed to mean "any and all."

**INSTRUCTIONS**

1.    This request seeks disclosure to the full extent of the Federal Rules of Civil Procedure and shall be interpreted as inclusive rather than exclusive.

2.      In responding to the examination questions below, please respond with all information that is available to You.

3.      The Court's interim protective order in the Order Governing Proceedings entered in this manner shall govern the disclosure of confidential information in this Action.   *See* Exhibit B4 at pp. 3–4.

4.      Upon entry of a final protective order in this manner that protective order shall govern the disclosure of confidential information in this Action.

## WITNESS QUESTIONNAIRE: EMMANUELLE WETZEL

1.      Please explain Your educational history, highest educational degrees received, dates received and institutions those degrees were earned from.

2.      Please explain Your general employment history, including companies You have worked for, and prior roles and titles, including job duties and responsibilities, and time periods for each.

3.      We understand that You have previously worked for Alcatel Lucent/Nokia, can You please describe Your past employment with Alcatel Lucent/Nokia, including the time period You worked for Alcatel Lucent/Nokia, what entity You worked for, and Your job duties and responsibilities in each former role, and time periods for each.

4.      Please describe Your current employment, including the time period You have been employed and job duties and responsibilities of each role held.

5.      Please describe Your knowledge of, participation in, and any Communications regarding the preparation and prosecution of the applications relating to the Asserted Patent.

6.      Please describe Your knowledge of, participation in, and any Communications regarding the preparation and prosecution of the applications relating to Related Patents, Related

Applications, and patents and applications incorporated by reference into the Asserted Patent.

7.      Please describe Your involvement or knowledge of:

      a.      Any agreements related to the Asserted Patents, Related Patents and/or Related Applications including the entities with which such agreements were made, the dates of such agreements, the terms of such agreements (including but not limited to the scope of any rights provided, the time period covered by such agreement and any amounts, compensation, license rates or royalties related thereto).

      b.      The licensing of any patents related to the Asserted Patents, Related Patents and/or Related Applications including the entities with which such agreements were made, the dates of such agreements, the terms of such agreements (including but not limited to the scope of any rights provided, the time period covered by such agreement and any amounts, compensation, license rates or royalties related thereto);

      c.      Any agreements with Plaintiff or Defendants; and

      d.   The Action, the decision to file the Action, any requests or offers to provide assistance, witnesses and/or documents for use in the Action, any financial, economic or other interest in the Action, and any discussion about standing of Plaintiff to bring the Action.

8.      Please describe any assignment, licensing, acquisition, financial interest, security interest, sale, transfer of rights (in whole or in part), or any other disposition of, or any offers to buy, sell, or license the Asserted Patent or any Related Patents or Related Applications.  Including a description of:

a.   Agreements granting rights, assignments, licenses, covenants, royalties, settlements, agreements releasing any third party from liability for infringement, and covenants not to sue, involving or concerning the Asserted Patent, Related Patents, or Related Applications;

b.   Negotiations, discussions, or other Communications relating to the Documents referenced in sub-paragraph a; and

c.   Communications (or documents relating thereto) between You and any potential Licensee or purchaser of the Asserted Patent, Related Patents or Related Applications.

9.   Please identify any and all entities that have acquired any right, financial interest, or security interest in the Asserted Patent or any Related Patents or Related Applications.

10.   Please describe any budgets, forecasts, revenues, licensing strategies, projections, costs, sales, expenses, margins, profits (including gross and net profits), or any other means for generating revenue from any Product, process, equipment, or service that You allege or believe embodies any claim of the Asserted Patent.

11.   Please describe any business plans, marketing plans, marketing efforts, advertising plans, advertising efforts, promotional programs, or offers for sale, involving or concerning the Asserted Patent, Related Patents, or Related Applications.

12.   Please describe any revenues, costs, expenses, and profits (including gross and net profits) generated in connection with Your ownership of, the Asserted Patent, and the methodology used to calculate or otherwise determine revenues, costs, expenses, and/or profits.

13.   Please describe any value assigned or allocated the Asserted Patent or any

Related Patents or Related Applications (either alone, or together with other patents or consideration, including as part of an intellectual property portfolio) for purposes of any acquisition, divestiture, insurance purchase, bankruptcy plan or proceeding, or any other business transaction.

14.     Please describe any relationship You have with any entity associated with Stuart A. Shanus, Marc Wade, and/or Craig Etchegoyen, including without limitation Wade and Company, Orange Holdings, WSOU, and/or Uniloc USA, Inc.,[1] including any patent license agreements with any such entity that relate to patents or patent applications that claim subject matter related to the subject matter of the Asserted Claims.

15.     Please describe any relationship between You and any potential or actual Licensees regarding the Asserted Patent, Related Patents, or Related Applications.

16.     Please explain Your policies and practices concerning patent agreements (including licensing), including:

     a.   Any written licensing policies or best practices;

     b.   Any most favored Licensee;

     c.   The economic and technical factors considered by You in drafting and entering into any license, royalties, standstill or settlement agreements;

     d.   Any standard or preferred terms for license, royalty, standstill or settlement agreements;

     e.   The process by which You determine the nature, scope and terms of license agreements in which You are a licensor; and

---

[1] Stuart A. Shanus and Craig Etchegoyen are the Chairman and President of WSOU.  Mark Wade, Wade and Company, Orange Holdings, and/or Uniloc USA, Inc. are all related persons or entities of WSOU.

      f.   Any circumstance in which You deviated from such policies.

17.   Please describe any attempts to sell or otherwise transfer financial interests in the Asserted Patent or any Related Patents, Related Applications, or any portfolio of patents containing the Asserted Patent.

18.   Please describe any right, title, or interest in any litigation or action (including the Action) involving any of the Asserted Patent, Related Patents, or Related Applications, including analyses or opinions related thereto.

19.   Please describe whether You and/or Your Licensees have complied with the marking or notice provisions of 35 U.S.C. § 287(a)[2] with respect to the Asserted Patent.

20.   Please describe any Communication You engaged in regarding each Defendant and its respective products or services, and any analysis You performed of each Defendant and its respective products and services related to the Asserted Patent, Related Patents or Related Applications.

21.   Please Describe Your knowledge of and understanding of the alleged invention(s) claimed and/or described in the Asserted Patent.

22.   Please describe Your knowledge of the dates and circumstances of the following

---

[2]  35 U.S.C. § 287(a) states: "Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or by fixing thereon the word "patent" or the abbreviation "pat." together with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice."

activities with regard to the subject matter disclosed and/or claimed in the Asserted Patent:

    a.    First written description and/or drawing of such subject matter;

    b.    First publication of such subject matter;

    c.    First promotion of such subject matter;

    d.    First advertisement of such subject matter;

    e.    First offer for sale of such subject matter;

    f.    First sale of such subject matter;

    g.    First availability to the public of knowledge of such subject matter;

    h.    First public use of such subject matter; and

    i.    All experimental uses or alleged experimental uses of such subject matter.

23.    Please describe Your knowledge of the state of the art at the time of filing for the Asserted Patent.

24.    Please describe Your knowledge of the state of the art at the time of filing of any Related Patents, Related Applications, and patents and applications incorporated by reference into the Asserted Patent.

25.    Please describe Your knowledge of any alleged benefits, advantages, disadvantages or limitations of those alleged invention(s) as compared to the state of the art at the time of filing, and the factual bases thereof.

26.    Please describe Your knowledge of the development of the alleged invention(s) claimed and/or described in the Asserted Patent, including a description of the dates and circumstances of conception, diligence, research, testing, design, development, reduction to practice (actual or constructive), or any other development of any element and/or limitation of any of the alleged inventions disclosed and/or claimed in the Asserted Patent.

27.     Please describe Your knowledge of the conception, diligence, research, testing, design, development, reduction to practice (actual or constructive), or any other development of any element and/or limitation of any of the alleged inventions disclosed and/or claimed in the Asserted Patent, including a description of each individual involved and the dates and circumstances of their contributions.

28.     Please describe Your knowledge of any facts, studies, investigations, information, documents (including Prior Art), analyses, and Communications You identified, received, or knew of at any time relating to:

      a.      The priority date of each invention disclosed and/or claimed in the Asserted Patent;

      b.      Any alleged validity or invalidity of the Asserted Patent;

      c.      Any alleged enforceability or unenforceability of the Asserted Patent;

      d.      Any alleged infringement or non-infringement of the Asserted Patent;

      e.      Any valuations of the Asserted Patent or any portfolio of patents that includes the Asserted Patent;

      f.      The priority date of each invention disclosed and/or claimed in any Related Patents, Related Applications, or patents and applications incorporated by reference into the Asserted Patent;

      g.      Any alleged validity or invalidity of any Related Patents, Related Applications, or patents and applications incorporated by reference into the Asserted Patent;

      h.      Any alleged enforceability or unenforceability of any Related Patents, Related Applications, or patents and applications incorporated by reference

into the Asserted Patent;

i.      Any alleged infringement or non-infringement of any Related Patents, Related Applications, or patents and applications incorporated by reference into the Asserted Patent; and

j.      Any valuations of any Related Patents, Related Applications, or patents and applications incorporated by reference into the Asserted Patent or any portfolio of patents that includes the aforementioned patents and applications.

29.     Please describe Your knowledge of the structure, functions, development of, or operation of, any embodiments of any alleged invention disclosed and/or claimed in the Asserted Patent, regardless of whether such embodiment was commercialized, and regardless of whether or not it worked properly.

30.     Please describe Your knowledge of any Documents and Communications exchanged with any trade associations, standards setting organizations, or industry working groups, relating to the Asserted Patent, Related Patents, Related Applications, or the inventions disclosed therein, including a description of:

a.      Communications with trade associations, standards setting organizations, or industry trade groups relating to the Asserted Patent, Related Patents, Related Applications, or the inventions disclosed therein;

b.      Technical and non-technical submissions to trade associations, standards setting organizations, or industry trade groups relating to the Asserted Patent, Related Patents, Related Applications, or the inventions disclosed therein;

    c.     Intellectual property declarations to any trade associations, standards setting organizations, or industry trade groups relating to the Asserted Patent, Related Patents, Related Applications, or the inventions disclosed therein; and

    d.     Documents related to trade associations, standards setting organizations, or industry trade groups meetings (including working group meetings) where the subject matter described and/or claimed in the Asserted Patent, or Related Patents was discussed.

31.    Please describe Your knowledge of what constitutes Fair Reasonable and Non-Discriminatory ("FRAND") or Reasonable and Non-Discriminatory ("RAND") terms relating to patent licensing in the technical space related to the subject matter of the Asserted Claims.

32.    Please describe Your role and/or any prior owner of the Asserted Patent, or any affiliates of You, or a prior owner of the Asserted Patent, in any standards setting organization from October 4, 2001 to present.

33.    Please describe Your knowledge of, and compliance with, intellectual property right policies of an international and/or domestic trade association or standards setting organization related to the subject matter of the Asserted Claims.

34.    Please describe Your knowledge of, and compliance with, FRAND and/or RAND obligations, including without limitation any policies, guidelines, or instructions, and any related analysis or discussions.

35.    Please identify and explain Your collection, retention and production of documents and information relevant to the Action, including but not limited to:

    a.     Your production of documents and information to Defendants, either

directly or indirectly through Plaintiff;

b.      Your efforts to identify, locate, and gather documents for production, including identification of custodians;

c.      The storage types and physical location of relevant data;

d.      A description of all sources containing the information which has been produced by You, including custodians thereof; and

e.      All databases and email systems containing information or documents relevant to the Action and produced, referenced, created or used through the present, and operation of such systems or databases, including ability to search, storage, retrieving, backup, archiving, cataloguing, and the identity of Persons responsible for administering those databases and/or email systems.

36.     Please describe the subject matter and content of all Documents and Communications identified and/or produced by You in this Action.

37.     Please explain the basis of authenticity of all Documents and Communications identified and/or produced by You in this Action.

38.     Please identify all Documents and Communications reviewed by You in connection with the deposition of these questions.

39.     Please identify all Documents and Communications relating to or referring to each of the above topics and questions.

# **EXHIBIT B2**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | § § § § | NO. 6:20-cv-482-ADA |
| Plaintiff, | § § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| DELL TECHNOLOGIES INC., DELL INC., AND EMC CORPORATION, | § § § | |
| Defendants. | § § | |

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Brazos" or "Plaintiff"), by and through its attorneys, files this First Amended Complaint ("Amended Complaint" or "Complaint") for Patent Infringement against Dell Technologies Inc., Dell Inc., and EMC Corporation (collectively, "Defendants") and alleges:

**NATURE OF THE ACTION**

1.      This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, et seq., including §§ 271, 281, 284, and 285.

**THE PARTIES**

2.      Brazos is a limited liability corporation organized and existing under the laws of Delaware, with its principal place of business at 605 Austin Avenue, Suite 6, Waco, Texas 76701.

3.      On information and belief, defendant Dell Technologies Inc. is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682.

4.      On information and belief, defendant Dell Inc. is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682.  Dell Inc. is wholly owned by its corporate parent, Dell Technologies Inc.

5.      On information and belief, defendant EMC Corporation is a Massachusetts corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682. EMC Corporation is wholly owned by its corporate parent, Dell Technologies Inc.

## JURISDICTION AND VENUE

6.      This is an action for patent infringement which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 284, and 285.

7.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

8.      This Court has specific and general personal jurisdiction over each defendant pursuant to due process and/or the Texas Long Arm Statute, because each defendant has committed acts giving rise to this action within Texas and within this judicial district. The Court's exercise of jurisdiction over each defendant would not offend traditional notions of fair play and substantial justice because each defendant has established minimum contacts with the forum. For example, on information and belief, each defendant has committed acts of infringement in this judicial district, by among other things, selling and offering for sale products that infringe the asserted patent, directly or through intermediaries, as alleged herein.

9.      Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§1391 and/or 1400(b). Each defendant has established places of business in the Western District of Texas. Each defendant is registered to do business in Texas. Upon information and belief, each defendant has transacted business in this District and has committed acts of infringement in this District.

## COUNT ONE - INFRINGEMENT OF
## U.S. PATENT NO. 7,424,020

10.     Brazos re-alleges and incorporates by reference the preceding paragraphs of this Complaint.

11.     On September 9, 2008, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,424,020 ("the '020 Patent'"), entitled "Network Nodes." A true and correct copy of the '020 Patent is attached as Exhibit A to this Complaint.

12.     Brazos is the owner of all rights, title, and interest in and to the '020 Patent, including the right to assert all causes of action arising under the '020 Patent and the right to any remedies for the infringement of the '020 Patent.

13.     Defendants make, use, sell, offer for sale, import, and/or distribute in the United States, including within this judicial district, products such as, but not limited to, Dell Edge Gateways (collectively, the "Accused Products").

14.     The Accused products Connect various wired and wireless devices and systems. The Edge Gateway    aggregates and    analyzes the data at the input and then transports it further.



https://www.dell.com/en-us/work/shop/gateways-embedded-computing/sf/edge-gateway

15. The Accused Products include interfaces for connecting the physical world, bridging both legacy systems and modern sensors (i.e. multiple terminals) to the network (i.e. communication network).

## Connect more things.

The Edge Gateway includes a wide variety of wired and wireless connections, including serial connections. The I/O on the intelligent device makes it easy to connect your legacy industrial systems and your new mesh networks. The Gateway uses Wi-Fi, WWAN and Ethernet to connect and communicate. Then the processing power of the Gateway supports middleware to aggregate, convert and normalize data from all the disparate protocols – from ModBus to BACnet to ZigBee and more.

https://www.dell.com/en-us/work/shop/gateways-embedded-computing/sf/edge-gateway



**Bring analytics to the network edge**

Dell's intelligent gateway sits near the devices and systems in distributed IoT networks. Meaningful data is sent to the cloud or data center to enrich the analytics, control and smart systems.

https://www.dell.com/ae/business/p/dell-edge-gateway-5000/pd

16. The Accused Product consists of multiple input and output interfaces and protocols to provide. A CANbus interface (i.e., first interface) connects legacy systems (i.e. multiple

terminals) to the Accused Products (i.e. node). The Accused Products further have a Fast Ethernet interface (i.e. second interface for connecting to a communication network) to gain network access.

| Model Number | Dell Edge Gateway 3001 Model For: General-Purpose Automation | Dell Edge Gateway 3002 Model For: Transportation/ Logistics | Dell Edge Gateway 3003 Model For: Media/Retail Kiosks |
|---|---|---|---|
| Dimensions | 125 mm wide x 125 mm high x 51 mm deep (4.9 x 4.9 x 2 inches). | | |
| Form factor | Fanless and headless (video port on 3003 only). Mounting optimized for 75x75mm VESA, wall (standard) mounting and DIN-rail mounting. Additional mounting options include perpendicular DIN-rail mount, quick-release DIN-rail mount, and cable management control bars for standard mounting | | |
| Weight | 1 kg +/- 0.02 kg (2.2lbs +/- 0.04lbs) | | |
| Processor Speed / Cache | Intel® Atom™ E3805 dual core 1.33 GHz / 1 MB | Intel® Atom™ E3805 dual core 1.33 GHz / 1 MB | Intel® Atom™ E3815 + 400 dual core+ MHz GPU 1.46 GHz / 512 KB |
| Operating system | Ubuntu Core 16, Ubuntu Server 18.04 and Windows 10 IoT Enterprise 2016 LTSB (only with 32GB eMMC). | | |
| Memory | 2 GB, DDR3L – 1066 MHz | | |
| Drive/Storage | Industrial-grade Micro-SD card: 8GB / 16GB / 32 GB / 64 GB (Contact Dell OEM Sales for larger options.) Embedded multi-media controller (eMMC): 8GB standard / 32GB option with WWAN. | | |
| I/O (Per Model) | 1 x 10/100 Fast Ethernet (RJ-45) with PoE (15.4W) Serial Interfaces: 2 x RS-232/422/485. GPIO Multi-function I/O: 0-5V, 8 channel, independently programmable, DAC, ADC. Optional ZigBee module. | 2 x 10/100 Fast Ethernet (RJ-45). Main port supports PoE (15.4W) Wireless PAN: Bluetooth Low Energy and integrated zigbee/802.15.4 module for mesh networking. CANbus / Controller Area Network (CAN2.0 A/B/FD) 1Mbps (CAN2.0), 5Mbps (CAN-FD). | 2 x 10/100 Fast Ethernet (RJ-45). Main port supports PoE (15.4W) Video: DisplayPort 1.1; resolution 2560x1600@60Hz) Audio: 3.5mm Line Out/Line In; RealTek codec for data-compressed, multi-channel streaming. Optional ZigBee module. |
| I/O (All models) | USB: 1x USB 2.0, 1x USB 3.0 | | |

https://i.dell.com/sites/doccontent/shared-content/data-sheets/en/Documents/Dell_Edge_Gateway_3000_Series_spec_sheet.pdf

| | | |
|---|---|---|
| | Used connection status light | Indicates the Used connection status. |
| 6 | Ethernet port one (with Power over Ethernet support) | Connect an Ethernet (RJ45) cable to gain network access. Provides data transfer speeds up to 10/100 Mbps and supports Alternative A of the IEEE 802.3af standard. ① **NOTE:** The Edge Gateway is an IEEE 802.3af Alternative A compliant Powered Device (PD). |

https://topics-cdn.dell.com/pdf/dell-edge-gateway-3000-series-users-guide2_en-us.pdf



**Take control**

**Network natively:** Each device comes equipped with a CAN bus interface and integrated ZigBee for mesh networking. This allows seamless communication to the many sensors and systems, whether it's in a vehicle, rail use, marine use and even aircrafts. This makes it cheaper and easier to "talk" to the many sensors and systems that use CAN without wasting an I/O slot.

**Power your work with ease:** Experience an uninterrupted work flow with Intel® Atom™ E3805, 2GB RAM, and 8GB eMMC (32GB w/WWAN).

**Track your mobile assets:** Integrated GPS, accelerometer and atmospheric pressure sensors enable efficient mobile use cases and geo-referenced asset management.

**Stay connected:** Connect via Ethernet (10/100), WWAN/Cellular, WLAN/Bluetooth LE/Wi-Fi, dual Ethernet, integrated zigbee and benefit from intuitive mesh networking.

https://www.dell.com/en-us/work/shop/cty/pdp/spd/dell-edge-gateway-3002/ctoi3002stdus#features_section

17.    The Accused Products include a processor (i.e. control unit) that removes a portion of protocol layers from the data received from the network    (i.e. communication network) and streams the remaining data to be transmitted to a bus on the legacy system              .

**Analytics at the edge**
The Dell Edge Gateway 5000 Series is designed to aggregate, secure and relay data from diverse sensors and equipment. The Intel® Atom™ processor provides capacity to perform local analytics so only meaningful information is sent to the next tier, which could be another gateway, the datacenter or the cloud. This minimizes consumption of expensive network bandwidth and reduces overall solution latency.

https://www.softwareag.com/es/images/454421_en_tcm411-169242.pdf

18.    The Accused Products provide a protocol converter.    When Layer 3 data has to be transmitted into a Layer 2 network, the     protocol data is removed by the protocol converter

(i.e. removes protocol data from a portion of protocol layers from a data stream received from the communication network via the second interface).

## Industrial IoT Edge Gateway

The edge gateway helps to connect OT and IT seamlessly. With diverse edge computing functions, the gateway can play as important role in multiple IoT constriction, such as protocol converter, data collector, or data logger. With

https://www.advantech.com/products/industrial-iot-edge-gateway/sub_9a0cc561-8fc2-4e22-969c-9df90a3952b5

19.     The Accused Products comprise a Fast Ethernet interface that is used to provide network access (i.e., second interface providing access to communication network) with help of a router. The router assigns an IP address to the Accused Product.

| Model Number | Dell Edge Gateway 3001 Model For: General-Purpose Automation | Dell Edge Gateway 3002 Model For: Transportation/ Logistics | Dell Edge Gateway 3003 Model For: Media/Retail Kiosks |
| --- | --- | --- | --- |
| Dimensions | 125 mm wide x 125 mm high x 51 mm deep (4.9 x 4.9 x 2 inches). | | |
| Form factor | Fanless and headless (video port on 3003 only). Mounting optimized for 75x75mm VESA, wall (standard) mounting and DIN-rail mounting. Additional mounting options include perpendicular DIN-rail mount, quick-release DIN-rail mount, and cable management control bars for standard mounting | | |
| Weight | 1 kg +/- 0.02 kg (2.2lbs +/- 0.04lbs) | | |
| Processor Speed / Cache | Intel® Atom™ E3805 dual core 1.33 GHz / 1 MB | Intel® Atom™ E3805 dual core 1.33 GHz / 1 MB | Intel® Atom™ E3815 + 400 dual core+ MHz GPU 1.46 GHz / 512 KB |
| Operating system | Ubuntu Core 16, Ubuntu Server 18.04 and Windows 10 IoT Enterprise 2016 LTSB (only with 32GB eMMC). | | |
| Memory | 2 GB, DDR3L – 1066 MHz | | |
| Drive/Storage | Industrial-grade Micro-SD card: 8GB / 16GB / 32 GB / 64 GB (Contact Dell OEM Sales for larger options.) Embedded multi-media controller (eMMC): 8GB standard / 32GB option with WWAN. | | |
| I/O (Per Model) | 1 x 10/100 Fast Ethernet (RJ-45) with PoE (15.4W) Serial Interfaces: 2 x RS-232/422/485. GPIO Multi-function I/O: 0-5V, 8 channel, independently programmable, DAC, ADC. Optional ZigBee module. | 2 x 10/100 Fast Ethernet (RJ-45). Main port supports PoE (15.4W) Wireless PAN: Bluetooth Low Energy and integrated zigbee/802.15.4 module for mesh networking. CANbus / Controller Area Network (CAN2.0 A/B/FD) 1Mbps (CAN2.0), 5Mbps (CAN-FD). | 2 x 10/100 Fast Ethernet (RJ-45). Main port supports PoE (15.4W) Video: DisplayPort 1.1; resolution 2560x1600@60Hz) Audio: 3.5mm Line Out/Line In; Re-alTek codec for data-compressed, multi-channel streaming. Optional ZigBee module. |
| I/O (All models) | USB: 1x USB 2.0, 1x USB 3.0 | | |

https://i.dell.com/sites/doccontent/shared-content/data-sheets/en/Documents/Dell_Edge_Gateway_3000_Series_spec_sheet.pdf

| | | |
| --- | --- | --- |
| | Ethernet connection status light | Indicates the Edge connection status |
| 6 | Ethernet port one (with Power over Ethernet support) | Connect an Ethernet (RJ45) cable to gain network access. Provides data transfer speeds up to 10/100 Mbps and supports Alternative A of the IEEE 802.3af standard. ⓘ NOTE: The Edge Gateway is an IEEE 802.3af Alternative A compliant Powered Device (PD). |

https://topics-cdn.dell.com/pdf/dell-edge-gateway-3000-series_users-guide2_en-us.pdf

1. Connect a network cable from Ethernet port one on the Edge Gateway to a DHCP-enabled network or router that provides IP addresses.
2. In your network's DHCP server, use the command `dhcp-lease-list` to obtain the IP address associated with the Edge Gateway's MAC address.

https://topics-cdn.dell.com/pdf/dell-edge-gateway-3000-series_users-guide2_en-us.pdf



**Take control**

**Network natively:** Each device comes equipped with a CAN bus interface and integrated ZigBee for mesh networking. This allows seamless communication to the many sensors and systems, whether it's in a vehicle, rail use, marine use and even aircrafts. This makes it cheaper and easier to "talk" to the many sensors and systems that use CAN without wasting an I/O slot.

**Power your work with ease:** Experience an uninterrupted work flow with Intel® Atom™ E3805, 2GB RAM, and 8GB eMMC (32GB w/WWAN).

**Track your mobile assets:** Integrated GPS, accelerometer and atmospheric pressure sensors enable efficient mobile use cases and geo-referenced asset management.

**Stay connected:** Connect via Ethernet (10/100), WWAN/Cellular, WLAN/Bluetooth LE/Wi-Fi, dual Ethernet, integrated zigbee and benefit from intuitive mesh networking.

https://www.dell.com/en-us/work/shop/cty/pdp/spd/dell-edge-gateway-3002/ctoi3002stdus#features_section

20. Fast Ethernet operates in a star-wired bus topology (i.e. communication network is a bus system).

## Fast Ethernet (100Mb) Network Speed

Fast Ethernet was the first-ever throughput extension of the switched Ethernet standard beyond 10 Mbps. Fast Ethernet (IEEE 802.3u) has a maximum data rate of 100 Mbps and is the first Ethernet standard created specifically to operate in a star wired bus topology. Fast Ethernet standards for fiber include 100Base-FX, 100Base-SX, 100Base-BX10 and 100Base-LX10. Fast Ethernet standards for copper include 100Base-TX, 100Base-T4 and 100Base-T2, 100Base-T1 and 100BaseVG.

https://www.transition.com/lines/network-switches/switch-network-speed/network-speed-fast-ethernet/

21. The Accused Products        connect    with the physical world    by bridging both legacy systems and modern sensors to the internet. One can aggregate and normalize virtually any data source, ranging from industry-standard protocols such as BACNet, Modbus, and CANbus, to modern wireless mesh networks like ZigBee and 6LoWPAN.

https://i.dell.com/sites/doccontent/corporate/secure/en/Documents/edge-gateway-specsheet.pdf,

22.     In the CANbus protocol, there is no explicit address in the messages.  I    nstead, each message carries a numeric value that controls its priority on the bus, and the numeric value would also serve as an identification of the contents of the message.



https://www.typhoon-hil.com/documentation/typhoon-hil-schematic-editor-library/References/can_bus_protocol.html

23.     A router connected to the internet assigns an IP address to the Accused Product. The Accused Product can connect to multiple IoT devices (i.e., terminals) such as sensors. The legacy systems, IoT devices, or sensors are assigned unique identifiers. The legacy systems and the sensors (connected via one of the CANbus, Modbus, Zigbee, etc) can be accessed by the

network (i.e., communication network) with the help of the Accused Product using the IP address

that is associated with the Accused Product.

| 6 | Ethernet port one (with Power over Ethernet support) | Connect an Ethernet (RJ45) cable to gain network access. Provides data transfer speeds up to 10/100 Mbps and supports Alternative A of the IEEE 802.3af standard.<br>ⓘ **NOTE:** The Edge Gateway is an IEEE 802.3af Alternative A compliant Powered Device (PD). |

https://topics-cdn.dell.com/pdf/dell-edge-gateway-3000-series_users-guide2_en-us.pdf, Page 7

1. Connect a network cable from Ethernet port one on the Edge Gateway to a DHCP-enabled network or router that provides IP addresses.
2. In your network's DHCP server, use the command `dhcp-lease-list` to obtain the IP address associated with the Edge Gateway's MAC address.

https://topics-cdn.dell.com/pdf/dell-edge-gateway-3000-series_users-guide2_en-us.pdf

power consumption per transmission. An IoT gateway with IP functionality
collects data from a bunch of sensors using the local wireless link and
transfers this data to the Internet on their behalf. Instead of an IP address,
each of these IoT devices is assigned with a unique identifier compatible with
its built-in wireless link.

https://behrtech.com/blog/3-facts-about-iot-devices-every-tech-leader-should-know/

24.     In view of preceding paragraphs, each and every element of at least claim 6 of the

'020 Patent is found in the Accused Products.

25.     Upon information and belief, each and every element of at least one claim of the

patent-in-suit is performed or practiced by Defendants at least through Defendants' own use and

configuration of its own Accused Products, and/or through Defendants' own testing and

configuration of its own Accused Products, and/or through Defendants' providing services for its

Accused Products, including but not limited to providing installation, deployment, support and

configuration of its Accused Products.

26.     Defendants continue to directly infringe at least one claim of the '020 Patent,

literally or under the doctrine of equivalents, by making, using, selling, offering for sale, importing,

and/or distributing the Accused Products in the United States, including within this judicial district, without the authority of Brazos.

27.     In May 2020, Plaintiff filed a suit against Defendants asserting infringement of the same patent and by the same accused products that are asserted in this case.  Plaintiff dismissed the prior suit before filing this suit.  As a result of the prior suit, Defendants had notice and actual or constructive knowledge of their infringement of the patent-in-suit since at least May 2020, before the filing of this case.  Further, Defendants had knowledge of their infringement of the patent-in-suit before the filing of this Amended Complaint.[1]

28.     Since at least May 2020, through its actions, Defendants have actively induced product makers, distributors, retailers, and/or end users of the Accused Products to infringe the '020 Patent throughout the United States, including within this judicial district, by, among other

---

[1] Dell filed a motion to dismiss that is mooted by this amended complaint.  Dell's motion cites a WDTX case (which relies authority from the District of Delaware) for the proposition that knowledge of a plaintiff's patent after the lawsuit was filed is insufficient to plead the requisite knowledge for indirect infringement.  *See Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) (citing *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D. Del. 2010)).  Several Delaware courts have since rejected this rule because there is no statutory basis to support it and because there is no purpose served by the formality of requiring the plaintiff to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint.  *See Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 566 (D. Del. 2012) ("The court acknowledges that this result is inconsistent with its prior decisions in *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D.Del.2010), and *EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F.Supp.2d 527 (D. Del. 2011).  Given the ease of amendment, the limitation of damages to post-knowledge conduct, and in the interests of judicial economy, the court finds that the better reasoning is to allow a complaint that satisfies Rule 8 to proceed to discovery rather than dismissing it for lack of pre-filing knowledge when, by the time the motion to dismiss has been filed, defendant in fact has the requisite knowledge as pled by plaintiff."); *see also IOENGINE, LLC v. PayPal Holdings, Inc.*, CV 18-452-WCB, 2019 WL 330515, at *4 (D. Del. Jan. 25, 2019) ("The Court sees no purpose that would be served by the formality of requiring IOENGINE to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint.").

things, advertising and promoting the use of the Accused Products in various websites, including providing and disseminating product descriptions, operating manuals, and other instructions on how to implement and configure the Accused Products. Examples of such advertising, promoting, and/or instructing include the documents at:

- https://www.dell.com/en-us/work/shop/gateways-embedded-computing/sf/edge-gateway
- https://www.dell.com/ae/business/p/dell-edge-gateway-5000/pd

29.  Since at least May 2020, through its actions, Defendants have contributed to the infringement of the '020 Patent by having others sell, offer for sale, or use the Accused Products throughout the United States, including within this judicial district, with knowledge that the Accused Products infringe the '020 Patent. The Accused Products are especially made or adapted for infringing the '020 Patent and have no substantial non-infringing use. For example, in view of the preceding paragraphs, the Accused Products contain functionality which is material to at least one claim of the '020 Patent.

**JURY DEMAND**

Brazos hereby demands a jury on all issues so triable.

**REQUEST FOR RELIEF**

WHEREFORE, Brazos respectfully requests that the Court:

(A)  Enter judgment that Defendants infringe one or more claims of the '020 Patent literally and/or under the doctrine of equivalents;

(B)  Enter judgment that Defendants have induced infringement and continue to induce infringement of one or more claims of the '020 Patent;

(C)     Enter judgment that Defendants have contributed to and continue to contribute to the infringement of one or more claims of the '020 Patent;

(D)     Award Brazos damages, to be paid by Defendants in an amount adequate to compensate Brazos for such damages, together with pre-judgment and post-judgment interest for the infringement by Defendants of the '020 Patent through the date such judgment is entered in accordance with 35 U.S.C. § 284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. § 284;

(E)     Declare this case exceptional pursuant to 35 U.S.C. § 285; and

(F)     Award Brazos its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court.

Dated: May 20, 2020                                Respectfully submitted,

                                                   */s/ James L. Etheridge*
                                                   James L. Etheridge
                                                   Texas State Bar No. 24059147
                                                   Ryan S. Loveless
                                                   Texas State Bar No. 24036997
                                                   Travis L. Richins
                                                   Texas State Bar No. 24061296
                                                   ETHERIDGE LAW GROUP, PLLC
                                                   2600 E. Southlake Blvd., Suite 120 / 324
                                                   Southlake, Texas 76092
                                                   Telephone: (817) 470-7249
                                                   Facsimile: (817) 887-5950
                                                   Jim@EtheridgeLaw.com
                                                   Ryan@EtheridgeLaw.com
                                                   Travis@EtheridgeLaw.com

                                                   Mark D. Siegmund
                                                   State Bar No. 24117055
                                                   mark@waltfairpllc.com

Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

**COUNSEL FOR PLAINTIFF**

# **EXHIBIT B3**

# UNITED STATES DISTRICT COURT
## Western District of Texas
## WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS LLC | § | |
| | § | |
| vs. | § | NO: WA:20-CV-00482-ADA |
| | § | |
| DELL TECHNOLOGIES INC., DELL INC., | § | |
| EMC CORPORATION | | |

### ORDER GOVERNING PROCEEDINGS – PATENT CASE

This Order shall govern proceedings in this case. The following deadlines are hereby set:

      This case is SET for a telephonic Rule 16 Case Management Conference on Wednesday, October 21, 2020 at 1:30 p.m. Participants shall dial into the following number 5 minutes before the scheduled time: **866.434.5269; access code 967-8090**. Lead counsel for each party, and all unrepresented parties, shall be present. Client representatives are welcome to attend, but such attendance is not required. In person attendance is permitted, but not required. Anyone planning to attend in person should so inform the Court by contacting chambers not later than two court days before the scheduled hearing so the Court can evaluate whether to hold the conference in the courtroom, or in chambers. The Court expects the parties to be prepared to discuss:

    a.  an overview of the claims and defenses, including any unique issues the parties believe should be addressed at this stage of the case;

    b.  issues involving the case schedule and potential amendments to the Court's default scheduling order, including the date for the *Markman* Hearing;

    c.  issues relating to claim construction, including whether a live tutorial would be of benefit to the Court;

    d.  issues relating to discovery, including potential amendments to the Court's default discovery limits or Protective Order; and,

    e.  any other issues the parties believe would lead to the just, speedy and inexpensive determination of this action.

2.     (Not later than 7 days before the CMC). Plaintiff shall serve preliminary infringement contentions in the form of a chart setting forth where in the accused product(s) each element of the asserted claims(s) are found. Plaintiff shall also identify the priority date (*i.c.*

the earliest date of invention) for each asserted claim and produce: (1) all documents evidencing conception and reduction to practice for each claimed invention, and (2) a copy of the file history for each patent in suit.

3.    (Not later than 3 business days before the CMC). Lead counsel for each party shall meet and confer (either in person or by telephone), to discuss whether they believe the Court's default Scheduling Order and default Discovery Limits are appropriate for this case, and any issues relating to the management of this case they intend to raise at the CMC.

4.    (Two weeks after the CMC). The Parties shall submit an agreed Scheduling Order. If the parties cannot agree, the parties shall submit a separate Joint Motion for entry of each Order briefly setting forth their respective positions on items where they cannot agree. Absent agreement of the parties, the Plaintiff shall be responsible for the timely submission of this and other Joint filings.

5.    (Two weeks after the CMC). Deadline for Motions to Transfer. The Court also adopts the following page limits and briefing schedule for Motions to Transfer:

a. Opening – 15 pages

b. Response – 15 pages, due 14 days after the Opening brief

c. Reply – 5 pages, due 7 days after the Response brief

6.    (Seven weeks after the CMC). Defendant shall serve preliminary invalidity contentions in the form of (1) a chart setting forth where in the prior art references each element of the asserted claim(s) are found, (2) an identification of any limitations the Defendant contends are indefinite or lack written description under section 112, and (3) an identification of any claims the Defendant contends are directed to ineligible subject matter under section 101. Defendant shall also produce (1) all prior art referenced in the invalidity contentions, (2) technical documents, including software where applicable, sufficient to show the operation of the accused product(s), and (3) summary, annual sales information for the accused product(s) for the two years preceding the filing of the Complaint,[1] unless the parties agree to some other timeframe.

## **DISCOVERY**

Except with regard to venue, jurisdictional, and claim construction-related discovery, all other discovery is stayed until after the *Markman* hearing. Notwithstanding this general stay of discovery, the Court will permit limited discovery by agreement of the parties, or upon request, where exceptional circumstances warrant. For example, if discovery outside the United States is contemplated, the Court will be inclined to allow such discovery to commence before the *Markman* hearing.

---

[1] With regard to expired patents, the sales information shall be provided for the two years preceding expiration.

With respect to venue and jurisdictional discovery, the Court generally grants leave for the parties to conduct targeted discovery (including, but not limited to requests for production, interrogatories, and depositions) with regard to motions to transfer venue or motions to dismiss based on lack of jurisdiction. If the parties disagree as to what reasonable discovery limits are, the Court encourages the parties to contact the Court to request a telephonic discovery hearing.

Following the *Markman* hearing, the following discovery limits will apply to this case. The Court will consider reasonable requests to adjust these limits should circumstances warrant.

1. Interrogatories: 30 per side2

2. Requests for Admission: 45 per side

3. Requests for Production: 75 per side

4. Fact Depositions: 70 hours per side (for both party and non-party witnesses combined)

5. Expert Depositions: 7 hours per report3

**Electronically Stored Information**. As a preliminary matter, the Court will not require general search and production of email or other electronically stored information (ESI), absent a showing of good cause. If a party believes targeted email/ESI discovery is necessary, it shall propose a procedure identifying custodians and search terms it believes the opposing party should search. The opposing party can oppose, or propose an alternate plan. If the parties cannot agree, they shall contact chambers to schedule a call with the Court to discuss their respective positions.

## DISCOVERY DISPUTES

A party may not file a Motion to Compel discovery unless: (1) lead counsel have met and conferred in good faith to try to resolve the dispute, and (2) the party has contacted the Court's law clerk (with opposing counsel) to arrange a telephone conference with the Court to summarize the dispute and the parties respective positions. After hearing from the parties, the Court will determine if further briefing is required.

## PROTECTIVE ORDER

Pending entry of the final Protective Order, the Court issues the following interim Protective Order to govern the disclosure of confidential information in this matter:

> If any document or information produced in this matter is deemed confidential by the producing party and if the Court has not entered a protective order, until a protective order is issued by the Court, the document shall be marked "confidential" or with some

---

[2] A "side" shall mean the plaintiff (or related plaintiffs suing together) on the one hand, and the defendant (or related defendants sued together) on the other hand. In the event that the Court consolidates related cases for pretrial purposes, with regard to calculating limits imposed by this Order, a "side" shall be interpreted as if the cases were proceeding individually. For example, in consolidated cases the plaintiff may serve up to 30 interrogatories on each defendant, and each defendant may serve up to 30 interrogatories on the plaintiff.

[3] For example, if a single technical expert submits reports on both infringement and invalidity, he or she may be deposed for up to 14 hours in total.

other confidential designation (such as "Confidential – Outside Attorneys Eyes Only") by the disclosing party and disclosure of the confidential document or information shall be limited to each party's outside attorney(s) of record and the employees of such outside attorney(s).

If a party is not represented by an outside attorney, disclosure of the confidential document or information shall be limited to one designated "in house" attorney, whose identity and job functions shall be disclosed to the producing party 5 days prior to any such disclosure, in order to permit any motion for protective order or other relief regarding such disclosure. The person(s) to whom disclosure of a confidential document or information is made under this local rule shall keep it confidential and use it only for purposes of litigating the case.

## CLAIM CONSTRUCTION ISSUES

**Terms for Construction**. Based on the Court's experience, the Court believes that it should have presumed limits on the number of claim terms to be construed. The "presumed limit" is the maximum number of terms that the parties may request the Court to construe without further leave of Court. If the Court grants leave for the additional terms to be construed, depending on the complexity and number of terms, the Court may split the Markman hearing into two hearings.

The presumed limits based on the number of patents-in-suit are as follows:

### Limits for Number of Claim Terms to be Construed

| 1-2 Patents | 3-5 Patents | More than 5 Patents |
|---|---|---|
| 10 terms | 12 terms | 15 terms |

When the parties submit their joint claim construction statement, in addition to the term and the parties' proposed constructions, the parties should indicate which party or side proposed that term, or if that was a joint proposal.

**Claim Construction Briefing**. The Court will require simultaneous claim construction briefing with the following default page limits; however, where exceptional circumstances warrant, the Court will consider reasonable requests to adjust these limits. These page limits shall also apply collectively for consolidated cases; however, the Court will consider reasonable requests to adjust page limits in consolidated cases where circumstances warrant. In addition, the Court is very familiar with the law of claim construction and encourages the parties to forego lengthy recitations of the underlying legal authorities and instead focus on the substantive issues unique to each case.

Unless otherwise agreed by the parties, all simultaneous filings will take place at 5:00 p.m. CT.

## Page Limits for Markman Briefs

| Brief | 1-2 Patents | 3-5 Patents | More than 5 Patents |
|---|---|---|---|
| Opening | 20 pages | 30 pages | 30 pages, plus 5 additional pages for each patent over 5 up to a maximum of 45 pages |
| Response | 20 pages | 30 pages | 30 pages, plus 5 additional pages for each patent over 5 up to a maximum of 45 pages |
| Reply | 10 pages | 15 pages | 15 pages, plus 2 additional pages for each patent over 5 up to a maximum of 21 pages |

**Conduct of the Markman Hearing**.

The Court generally sets aside one half day for the *Markman* hearing; however, the Court is open to reserving more or less time, depending on the complexity of the case and input from the parties. The Court requires submission of technology tutorials in advance of the *Markman* hearing when they may be of benefit. The parties may submit tutorials in electronic form not later than one week before the *Markman* hearing and the Court encourages the parties to aim for tutorials with voiceovers in the 15 minute range. If a party intends to present a live tutorial, the parties should contact the Court to set-up a Zoom or telephonic tutorial to occur at least a week before the *Markman* hearing. In general, tutorials should be: (1) directed to the underlying technology (rather than argument related to infringement or validity), and (2) limited to 15 minutes per side. For the Court's convenience, the tutorial may be recorded, but will not be part of the record. Parties may not rely on or cite to the tutorial in other aspects of the litigation.

The Court will consider the parties suggestions on the order of argument at the *Markman* hearing. However, if the parties do not suggest a different procedure, the Court will allow the Plaintiff to pick the first term and then alternate by term. As a general rule, if one side proposes "plain and ordinary meaning" as its construction or asserts that a term is indefinite, the other party shall go first.

## GENERAL ISSUES

1.  The Court does not have a limit on the number of motions for summary judgment (MSJs); however, absent leave of Court, the cumulative page limit for Opening Briefs for all MSJs is 40 pages per side.

2.     There may be instances where the submission of substantive briefs via audio file will be of help to the Court. If a party is contemplating submitting a brief via audio file it should contact the Court for guidance on whether it would be helpful to the Court. However, the Court has determined that audio recordings of *Markman* briefs are of limited value and those need not be submitted. The recordings shall be made in a neutral fashion, shall be verbatim transcriptions without additional colloquy (except that citations and legal authority sections need not be included), and each such file shall be served on opposing counsel. The Court does not have a preference for the manner of recording and has found automated software recordings, as well as attorney recordings, to be more than satisfactory. Audio files shall be submitted via USB drive, Box (not another cloud storage), or email to the law clerk (with a cc to opposing counsel) and should be submitted in mp3 format.

3.     The Court will entertain reasonable requests to streamline the case schedule and discovery and encourages the parties to contact the Court's law clerk (with opposing counsel) to arrange a call with the Court when such interaction might help streamline the case.

4.     The Court is generally willing to extend the response to the Complaint up to 45 days if agreed by the parties. However, longer extensions are disfavored and will require good cause.

5.     For Markman briefs, summary judgment motions, and *Daubert* motions, each party shall deliver to Chambers one (1) paper copy of its Opening, Response, and Reply Briefs, omitting attachments, no later than one week after the last-filed brief or at least a week before the hearing, whichever is earlier.

6.     Plaintiff must file a notice informing the Court when an IPR is filed, the expected time for an institution decision, and the expected time for a final written decision, within two weeks of the filing of the IPR.

7.     To the extent the parties need to email the Court, the parties should use the following email address: TXWDml_LawClerks_JudgeAlbright@txwd.uscourts.gov.

ORDERED this 5th day of October, 2020.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

APPENDIX A – DEFAULT SCHEDULE

| Deadline | Item |
| --- | --- |
| 7 days before CMC | Plaintiff serves preliminary[4] infringement contentions in the form of a chart setting forth where in the accused product(s) each element of the asserted claim(s) are found. Plaintiff shall also identify the earliest priority date (*i.e.* the earliest date of invention) for each asserted claim and produce: (1) all documents evidencing conception and reduction to practice for each claimed invention, and (2) a copy of the file history for each patent in suit. |
| 2 weeks after CMC | Deadline for Motions to Transfer. |
| 7 weeks after CMC | Defendant serves preliminary invalidity contentions in the form of (1) a chart setting forth where in the prior art references each element of the asserted claim(s) are found, (2) an identification of any limitations the Defendant contends are indefinite or lack written description under section 112, and (3) an identification of any claims the Defendant contends are directed to ineligible subject matter under section 101. Defendant shall also produce (1) all prior art referenced in the invalidity contentions, (2) technical documents, including software where applicable, sufficient to show the operation of the accused product(s), and (3) summary, annual sales information for the accused product(s) for the two years preceding the filing of the Complaint, unless the parties agree to some other timeframe. |
| 9 weeks after CMC | Parties exchange claim terms for construction. |
| 11 weeks after CMC | Parties exchange proposed claim constructions. |
| 12 weeks after CMC | Parties disclose extrinsic evidence. The parties shall disclose any extrinsic evidence, including the identity of any expert witness they may rely upon with respect to claim construction or indefiniteness. With respect to any expert identified, the parties shall also provide a summary of the witness's expected testimony including the opinions to be expressed and a general description of the basis and reasons therefor. A |

---

[4] The parties may amend preliminary infringement contentions and preliminary invalidity contentions without leave of court so long as counsel certifies that it undertook reasonable efforts to prepare its preliminary contentions and the amendment is based on material identified after those preliminary contentions were served, and should do so seasonably upon identifying any such material. Any amendment to add patent claims requires leave of court so that the Court can address any scheduling issues.

OGP Version 3.0

| | failure to summarize the potential expert testimony in a good faith, informative fashion may result in the exclusion of the proffered testimony. With respect to items of extrinsic evidence, the parties shall identify each such item by production number or produce a copy of any such item if not previously produced. |
|---|---|
| 13 weeks after CMC | Deadline to meet and confer to narrow terms in dispute and exchange revised list of terms/constructions. |
| 14 weeks after CMC | Parties file Opening claim construction briefs, including any arguments that any claim terms are indefinite. |
| 17 weeks after CMC | Parties file Responsive claim construction briefs. |
| 19 weeks after CMC | Parties file Reply claim construction briefs. |
| 20 weeks after CMC | Parties submit Joint Claim Construction Statement. In addition to filing, the parties shall jointly submit, via USB drive, Box (not another cloud storage),[5] or email to the law clerk, pdf versions of all as-filed briefing and exhibits. Each party shall deliver to Chambers paper copies of its Opening, Response , and Reply *Markman* Briefs, omitting attachments. Absent agreement of the parties, the Plaintiff shall be responsible for the timely submission of this and other Joint filings. |
| 23 weeks after CMC (but at least 1 week before Markman hearing) | Parties submit optional technical tutorials. The parties shall also jointly submit, via USB drive, Box (not another cloud storage), or email to the law clerk, pdf versions of all as-filed briefing and exhibits. |
| 24 weeks after CMC (or as soon as practicable) | Markman Hearing at [9:00 a.m. or 1:00 p.m.] |
| 1 business day after Markman hearing | Fact Discovery opens; deadline to serve Initial Disclosures per Rule 26(a). |
| 6 weeks after Markman hearing | Deadline to add parties. |
| 8 weeks after Markman hearing | Deadline to serve Final Infringement and Invalidity Contentions. After this date, leave of Court is required for any amendment to Infringement or Invalidity contentions. This deadline does not relieve the Parties of their obligation to |

[5] To the extent a party wishes to use cloud storage, the parties should contact the law clerk to request a Box link so that the party can directly upload the file to the Court's Box account.

OGP Version 3.0

| | seasonably amend if new information is identified after initial contentions. |
|---|---|
| 12 weeks after Markman hearing | Deadline to amend pleadings. A motion is not required unless the amendment adds patents or patent claims. |
| 26 weeks after Markman | Deadline for the first of two meet and confers to discuss significantly narrowing the number of claims asserted and prior art references at issue. Unless the parties agree to the narrowing, they are ordered to contact the Court's Law Clerk to arrange a teleconference with the Court to resolve the disputed issues. |
| 30 weeks after Markman hearing | Close of Fact Discovery. |
| 31 weeks after Markman hearing | Opening Expert Reports. |
| 35 weeks after Markman hearing | Rebuttal Expert Reports. |
| 38 weeks after Markman hearing | Close of Expert Discovery. |
| 39 weeks after Markman hearing | Deadline for the second of two meet and confer to discuss narrowing the number of claims asserted and prior art references at issue to triable limits. To the extent it helps the parties determine these limits, the parties are encouraged to contact the Court's Law Clerk for an estimate of the amount of trial time anticipated per side. The parties shall file a Joint Report within 5 business days regarding the results of the meet and confer. |
| 40 weeks after Markman hearing | Dispositive motion deadline and *Daubert* motion deadline. |
| 42 weeks after Markman hearing | Serve Pretrial Disclosures (jury instructions, exhibits lists, witness lists, discovery and deposition designations). |
| 44 weeks after Markman hearing | Serve objections to pretrial disclosures/rebuttal disclosures. |
| 45 weeks after Markman hearing | Serve objections to rebuttal disclosures and **File** Motions *in limine.* |

9

OGP Version 3.0

| 46 weeks after Markman hearing | File Joint Pretrial Order and Pretrial Submissions (jury instructions, exhibits lists, witness lists, discovery and deposition designations); file oppositions to motions *in limine* |
|---|---|
| 47 weeks after Markman hearing | File Notice of Request for Daily Transcript or Real Time Reporting. If a daily transcript or real time reporting of court proceedings is requested for trial, the party or parties making said request shall file a notice with the Court and e-mail the Court Reporter, Kristie Davis at kmdaviscsr@yahoo.com<br><br>Deadline to meet and confer regarding remaining objections and disputes on motions *in limine*. |
| 3 business days before Final Pretrial Conference. | File joint notice identifying remaining objections to pretrial disclosures and disputes on motions *in limine*. |
| 49 weeks after Markman hearing (or as soon as practicable) | Final Pretrial Conference. The Court expects to set this date at the conclusion of the *Markman* Hearing. |
| 52 weeks after Markman hearing (or as soon as practicable)[6] | Jury Selection/Trial. The Court expects to set these dates at the conclusion of the *Markman* Hearing. |

[6] If the actual trial date materially differs from the Court's default schedule, the Court will consider reasonable amendments to the case schedule post-*Markman* that are consistent with the Court's default deadlines in light of the actual trial date.

OGP Version 3.0